IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRIGITTE HOFFMAN, et al., | |
|                        Plaintiffs, | |
| v. | 1:04-cv-3452-WSD |
| MEDQUIST, INC., et al., | |
|                        Defendants. | |

## ORDER

This matter is before the Court on Defendants MedQuist Inc. and MedQuist Transcriptions, Ltd.'s (collectively, the "MedQuist Defendants") Motion to Dismiss or Transfer the Amended Class Action Complaint Pursuant to Fed. R. Civ. Proc. 12(b)(3) and 28 U.S.C. § 1406, or to Transfer Pursuant to 28 U.S.C. § 1404 [16].

## Background

This is a class action brought on behalf of Plaintiffs and all other employees and statutory workers of the MedQuist Defendants from January 1, 1998, to the present, who are or were compensated on a "per line" basis for medical transcription services. Plaintiffs allege they and members of the nationwide class

they purport to represent have been systematically and wrongfully underpaid for medical transcription services as a result of the acts or omissions of Defendants. Specifically, they allege Defendants, primarily the MedQuist Defendants, devised and enacted a scheme to undercount the number of lines that Plaintiffs transcribed, resulting in reduced pay and benefits to Plaintiffs, by
(i) failing to consistently and accurately count the true number of characters within documents; (ii) using ratios and formulas to arrive at line counts, rather than counting characters, thereby undercounting the number of transcribed lines for payroll purposes; (iii) creating, manipulating, and routinely changing and altering software, transcription platforms and other technology, which were supposed to accurately count the number of transcribed lines, but instead which were created, designed, altered or modified by Defendants to undercount the number of transcribed lines for which Plaintiffs were to be paid; (iv) constructing a complex, varying and inconsistent line calculation method, which bore no rational resemblance to the contracted-for definition of a line; and (v) employing methods of transcription and internal procedures to conceal from Plaintiffs the methods used to determine the number of transcribed lines for payroll purposes.  (Am. Compl. ¶¶ 7-10.)  The scheme is alleged to have been conceived and enacted in New Jersey,

the site of MedQuist's headquarters and where the company's senior management works.

Plaintiffs assert claims for fraud in the inducement, actual fraud, constructive fraud, breach of contract, *quantum meruit*, unjust enrichment, conversion, negligence, and negligent supervision, as well as claims under the federal and Georgia Racketeer Influenced and Corrupt Organizations Acts. They also seek an accounting of the amounts of compensation allegedly unlawfully retained and not paid for medical transcription services provided by Plaintiffs. In addition to the MedQuist Defendants, Plaintiffs named the following entities and persons as defendants in this action: Koninklijke Philips Electronics N.V. a/k/a Royal Philips Electronics of the Netherlands (a Dutch corporation alleged to own a controlling interest in MedQuist, Inc.), U.S. Philips Corporation, Philips Electronics North America Corporation and Philips Medical Systems, Inc. (wholly owned United States subsidiaries of Royal Philips Electronics incorporated in Delaware with their principal place of business in New York) (collectively, the "Philips Defendants"), and John A. Donohoe, Jr. (former President and Chief Operating Officer of MedQuist, Inc.).

The MedQuist Defendants request that the Court transfer this case to the

United States District Court of New Jersey, Camden Division, pursuant to 28 U.S.C. § 1404(a).  They argue it would be more convenient to the parties and the witnesses for this case to be litigated in New Jersey.  In the alternative, they move the Court to dismiss or transfer this case for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a).  Plaintiff opposes the MedQuist Defendants' motion, arguing that New Jersey would not be a more convenient forum for this litigation and that venue is proper in this District.

## Discussion

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); see generally Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (holding that the purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense") (quotations omitted).  The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion.  See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 654-55 (11th Cir. 1993) (reviewing district court's transfer of

venue for clear abuse of discretion).  Section 1404(a) "requires the court to consider three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice."  <u>Moore v. McKibbon Bros., Inc.</u>, 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998).  The presence of related proceedings in the transferee court is also a factor to be considered by the court, <u>see</u> <u>Martin v. South Carolina Bank</u>, 811 F. Supp. 679, 687 (M.D. Ga. 1992), and some courts have indicated this factor may be more important than the three set out in Section 1404(a), <u>see, e.g.</u>, <u>Mirasco v. American National Fire Insurance. Co.</u>, No. 1:00-cv-947-ODE, 2000 WL 34440850, *5 (N.D. Ga. July 5, 2000) ("The most persuasive reason for transferring this action is that a related action involving the same issues is pending in the [transferee court]."), and <u>Weber v. Basic Comfort Inc.</u>, 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001) ("[The presence of a related case] is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite.").  The moving party bears the burden of establishing that the balance of Section 1404(a) interests favors the transfer.  <u>Id.</u> (citing <u>In re Ricoh Corp.</u>, 870 F.2d 570 (11th Cir.

1989)); Martin, 811 F. Supp. at 687.[1]

Having reviewed the record and the submissions of both parties, the Court finds the balance of factors under Section 1404(a) weighs substantially in favor of transfer.[2]  First, there are three class action lawsuits pending in the District of New Jersey which involve the same or substantially similar issues as this case: South Broward Hosp. Dist. v. MedQuist Inc., No. CV04-750 (C.D. Cal., filed Oct. 4, 2004, transferred to D.N.J. Mar. 31, 2005); Steiner v. MedQuist Inc., No. 04-CV-5487 (D.N.J., filed Nov. 18, 2004); and Myers v. MedQuist Inc., No. 05-CV-4608

---

[1] Although "[t]he federal courts traditionally have accorded a plaintiff's choice of forum considerable deference," Ricoh Corp., 870 F.2d at 573, this deference is significantly lessened in class action cases, Gould v. National Life Insurance Co., 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) ("Plaintiff's choice of forum is entitled to less deference when the action is one brought on behalf of a class of persons similarly situated . . . .") (citing In Koster v. Lumbermens Mutual Cas. Co., 330 U.S. 518, 524 (1947)).  Plaintiff's choice of forum is also entitled to less deference where, as here, the facts underlying the cause of action occurred elsewhere.  See Gould, 990 F. Supp. at 1358 ("[W]hen 'the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.'") (quoting Garay v. BRK Elecs., 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)).

[2] Because the Court finds the case should be transferred to the District of New Jersey under Section 1404(a), it is not necessary for the Court to address whether the case should be dismissed or transferred for improper venue under Rule 12(b)(3) and Section 1406(a).

(D.N.J., filed Sept. 22, 2005).[3] In Myers, the plaintiffs allege they have been systematically and wrongfully underpaid for medical transcription services as a result of a fraudulent scheme conceived and conducted by MedQuist and its officers and directors. As in this case, the putative class in Myers is defined as all current and former employees and/or independent contractors of the MedQuist Defendants who were paid on a "per line" basis for medical transcription services. The only difference between the putative classes in Myers and this case is the time period -- in Myers, the putative class includes all workers paid by the MedQuist Defendants from January 1, 1999, to the present; the putative class in this case includes all workers paid by the MedQuist Defendants from January 1, 1998, to the present.

In South Broward, the putative class of MedQuist customers allege that MedQuist wrongfully overcharged them for transcription services by calculating the line counts in a manner that systematically and repeatedly inflated its line counts.

---

[3] A fourth related action pending in the District of New Jersey -- Kanter v. Barella, No. 04-CV-5542 (D.N.J., filed Nov. 12, 2004) -- was dismissed on September 21, 2005. Kanter was a derivative action in which the plaintiff alleged that MedQuist's officers and directors violated their fiduciary duties by causing or allowing the company to engage in fraudulent billing practices.

This action originally was filed in the Central District of California, but was transferred to the District of New Jersey as a result of a motion to transfer filed by MedQuist.  Steiner is a putative shareholders' class action in which the plaintiffs allege MedQuist fraudulently applied the line-count definition and that this billing practice rendered its financial statements and other public financial information false and misleading.

The claims in each of these three pending cases arise from an alleged fraudulent scheme conceived and enacted by MedQuist and its officers and directors to manipulate line counts in transcribed reports.  Each was filed in or transferred to the District of New Jersey and assigned to the Honorable Jerome B. Simandle.  These cases, particularly Myers, involve factual and legal issues which overlap substantially with the facts alleged and the issues presented in this case.  The discovery processing and eventual adjudication of these cases in the same district will promote efficiency and mitigate against the risk of inconsistent or contradictory rulings with respect to discovery and other substantive matters.  See Martin, 811 F. Supp. at 687 (holding that "although a plaintiff's choice of forum is entitled to deference, it is not a more important factor than the presence of related proceedings in the transferee court" and concluding "it would be a monumental

waste of judicial resources for this Court to consider the same issues that are pending in the [transferee] court and inconsistent judgments might result from its retention of this case"); Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 539 (D.N.J. 2000) (holding that the presence of a related case in the transferee district supported transfer, even if the related case was not identical: "While it appears these cases are not candidates for consolidation, it appears transferring this litigation to the proposed forum may well prevent the needless loss of time, expense and resources of the parties") (citations omitted).  Accordingly, the Court concludes that the presence of these related cases in the District of New Jersey argues persuasively in favor of transfer.

Second, litigating this matter in New Jersey will be more convenient for the greater number of the parties and witnesses, especially those alleged to have had the most substantial and influential role in designing and implementing the scheme alleged by Plaintiffs.  The MedQuist Defendants' headquarters and principal place of business is in New Jersey, and the Philips Defendants are Delaware corporations with their principal place of business in New York.  Most of the current or former officers or employees of MedQuist named as Defendants in the initial Complaint or Amended Complaint either reside or work in New Jersey, or reside in nearby

Philadelphia, Pennsylvania.  (See Declaration of Neal Marder, attached to Defs.' Mot. to Transfer as Ex. 6, at ¶ 7.)  The potential class members in this case are located throughout the United States, and there is no indication or evidence from Plaintiffs that a greater or even a substantial number of these class members will be found in Georgia or the Southeast.  Although the class representative Plaintiffs are alleged to reside in Georgia and work for MedQuist at an office within this District, the participation of class representatives generally is minimal, and Plaintiffs have not argued this case is an exception.  See Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 231 (D.N.J. 1996) (holding that the "convenience of the parties" element weighed in favor of transfer, even though the named plaintiffs resided in the transferor district, because the putative class was nationwide, the defendants were located in the transferee district, and there was no indication the class representative's participation would be more than minimal).  Finally, it is undisputed that the alleged fraudulent scheme at issue in this case was devised, if at all, among the various officers and directors of the MedQuist Defendants working in the New Jersey headquarters, and that as a result the vast majority of key non-party witnesses in this matter reside or work in New Jersey or in nearby Philadelphia.  (See Marder Decl. ¶ 6.)  "[T]ransferring venue to one near these witnesses' homes

and work responsibilities will benefit the witnesses by reducing the amount of time that they will be away from their families and jobs when appearing at trial." Bell v. K Mart Corp., 848 F. Supp. 996, 999 (N.D. Ga. 1994) (quotation omitted).[4]

Finally, when considering the interest of justice, the Court "looks at the same factors that have been traditionally used in applying the doctrine of forum non conveniens." Moore, 41 F. Supp. 2d at 1356-57 (citing Norwood v. Kirkpatrick, 349 U.S. 29 (1955)). Among the factors that the Court considers are (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) the possibility of view of premises, if view would be appropriate to the action; and (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). "To examine 'the relative ease of access to sources of proof,' and the availability of witnesses, the district court must scrutinize the substance of the dispute between

---

[4] Plaintiff's counsel are based in the Northern District of Georgia, and it is likely that a transfer to the District of New Jersey would impose some additional burden and expense on them. However, "[i]t is well established that the fact that counsel may be inconvenienced is [almost] always irrelevant to whether the motion for transfer should be granted." Bell, 848 F. Supp. at 999 (citation omitted) (second alteration in original).

the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988) (citations omitted).

Here, the crux and litigation focal point of Plaintiff's case is the alleged fraudulent scheme devised by MedQuist officers and directors employed at the company's New Jersey headquarters to underpay the putative class for medical transcription services.  Defendants' alleged liability-creating conduct is alleged to have occurred in New Jersey.  The documents and other sources of proof relevant to demonstrating the existence and operation of this alleged scheme likely will be found in New Jersey.  In short, New Jersey is the center of the litigation.   Although proof of the implementation of the alleged fraudulent scheme and the alleged resulting damages suffered by the putative class members likely will be found in local MedQuist offices, where the alleged incorrect "per line" calculations were carried out, this fact does not make Georgia a more convenient venue for purposes of access to proof.  First, the Court anticipates that a significant amount of the proof of the implementation of the alleged scheme will consist of payroll and other electronic data which the MedQuist Defendants represent is accessible from

12

anywhere, including their New Jersey offices.  Second, to the extent tangible sources of proof exist at local MedQuist offices, such as its customer service centers, these offices are located throughout the United States, and New Jersey contains two such offices compared to Georgia's one.  Further, as discussed above, the majority of the potential witnesses for deposition and trial are located in or close to New Jersey.  Thus, considerations of access to sources of proof and the cost of obtaining attendance of witnesses weigh heavily in favor of transferring this case to the District of New Jersey.

## Conclusion

Based on the pleadings in this case and the evidence and arguments presented in the MedQuist Defendants' motion, the Court finds that, for the convenience of the parties and witnesses, this matter should be transferred to the District of New Jersey, Camden Division.  The Court further finds this action could have been brought in the District of New Jersey originally.  Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or Transfer is **GRANTED** and the Clerk of Court is **DIRECTED** to transfer this case to the United States District Court of New Jersey, Camden Division.

**SO ORDERED**, this 16th day of November, 2005.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE